## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIE BAINES | No. 3:20-CR-00261 (MPS) |

## RULING ON MOTION TO SUPPRESS

On June 15, 2021, a grand jury returned a Second Superseding Indictment charging Defendant Willie Baines with one count of conspiracy to transport and possess stolen vehicles and property in violation of 18 U.S.C. § 371, two counts of transportation of stolen property in violation of 18 U.S.C. § 2314, and two counts of possession of stolen property in violation of 18 U.S.C. § 2315.  The Second Superseding Indictment also charged Josepher Y. Cartagena, Alexander J. Santiago, Douglas Noble, and Justin Herrera.[1]  Before the Second Superseding Indictment, the Government applied for a search warrant for location and other historical information associated with nine cell phones and held by cellular phone providers AT&T, Sprint, T-Mobile, and Verizon.  The Government attributed two of those phones to Baines.  U.S. Magistrate Judge Robert Spector issued the warrant on May 19, 2021.  Baines moves to suppress the evidence seized by investigators pursuant to the search warrant arguing that the affidavit supporting the application for the warrant did not establish probable cause and that the warrant was overbroad.  ECF No. 139-1 at 1, 9.  For the reasons below, I deny Baines's motion to suppress.

## I.       FACTUAL BACKGROUND

---

[1] I will refer to Baines, Cartagena, Santiago, Noble, and Herrera as "Defendants."

### a. The Indictment and the Superseding Indictment

On December 22, 2020, a grand jury returned an Indictment charging Cartagena with one count of conspiracy to transport and possess stolen vehicles and property in violation of 18 U.S.C. § 371, two counts of transportation of a stolen vehicle in violation of 18 U.S.C. § 2312, and two counts of possession of a stolen vehicle in violation of 18 U.S.C. § 2313.  ECF No. 5.[2] The Indictment alleged that Cartagena and unnamed co-conspirators stole vehicles and/or transported them across state lines on July 28, 2020, July 29, 2020, and July 31, 2020.  *Id.* at 2–3.

On February 16, 2021, a grand jury returned a Superseding Indictment adding Santiago, Noble, and Herrera as defendants and members of the conspiracy and adding new counts of transportation of stolen property and possession of stolen property.  ECF No. 38.  The Superseding Indictment alleged that Cartagena, Santiago, Noble, and Herrera—some or all of them—stole vehicles and/or transported them across state lines on July 25, 2020, July 28, 2020, July 29, 2020, and July 31, 2020 and stole cell phones and transported them across state lines on July 29, 2020, November 20, 2020, and December 11, 2020.  *Id.* at 4–5.  The Superseding Indictment alleged that the conspiracy spanned the period from July 2020 to January 15, 2021. *Id.* at 2.

### b. The Search Warrant Applications

After the Superseding Indictment, on May 18, 2021, the Government applied for four search warrants for "historical information" associated with nine telephones ("Target Telephones") that the Defendants allegedly used.  21-MJ-503, ECF Nos. 1, 3, 5, 6.[3]  In support

---

[2] Unless otherwise indicated, the ECF numbers refer to the filings from this docket, 20-cr-261.

[3] The information sought by the Government from the cell phone service providers is described in detail in Attachment B to the Affidavit of FBI Task Force member Matthew G. Hancock.  *See* ECF No. 146-1 at 25.  It includes, among others, subscriber names and addresses, call times and durations, phone identification numbers, information regarding the means and source of payment, and "cell-site location information," i.e., "information regarding the cell tower and antenna face (also known as 'sectors') through which communications were sent and received."  *Id.* at 26.  In this Ruling, I will refer to "cell-site location information," which the Government frequently

of the search warrants, the Government submitted a twenty-page Affidavit from Matthew G. Hancock, a member of a Task Force of the Federal Bureau of Investigation ("FBI").  21-MJ-503, ECF Nos. 1-1, 3-1, 5-1, 6-1; *see also* ECF No. 146-1.  Hancock attributed two of the telephone numbers to Baines and the rest to Cartagena, Santiago, Herrera, and Noble.  *Id.* ¶ 1.  In the Affidavit, Hancock detailed his qualifications including his employment as a State Trooper, his previous employment as a member of the New Haven Police Department, and his experience in investigations involving interstate theft rings.  *Id.* ¶ 3.  He explained that he is "thoroughly familiar with the circumstances of the investigation" as a result of his participation in the investigation and that "[t]he facts in [the] affidavit come from [his] personal observations, [his] training and experience, and information obtained from other law enforcement officers."  *Id.* ¶ 4.  He stated that the affidavit "does not set forth all of [his] knowledge about this matter."  *Id.*

Hancock provided background information on the FBI's ongoing investigation into a criminal conspiracy—of which the Defendants are alleged members—"that, from around July 2020 or earlier to January 2021, conducted coordinated burglaries of car dealerships and mobile phone stores in Connecticut, New York, and elsewhere."  *Id.* ¶ 6.  The members of the conspiracy are "suspected in approximately 200 burglaries."  *Id.*  He described the Superseding Indictment, which charged Cartagena, Santiago, Noble, and Herrera but not Baines.  *Id.* ¶ 7.  He also detailed the stolen merchandise, cash, vehicle keys and key fobs, ammunition, police radio, brand-new cell phones, and a glass-punch device that law enforcement officers had seized pursuant to search warrants for cell phones and for Cartagena's and Santiago's residences, and provided images of these items and of one or more Defendants.  *Id.* ¶¶ 8–10 (including photographs of stolen merchandise at Cartagena's and Santiago's residences).

---

requests permission to obtain in order to determine an individual's location at the time a crime was known to be committed, simply as "location information."

Hancock then described the use of cell phones by the members of the alleged conspiracy. Based on his training and experience, Hancock averred that "individuals involved in the types of crime under investigation here (trafficking in illicit or stolen goods, where regular phone contact with suppliers and customers is essential) frequently cycle from one cell phone to another in an effort to thwart detection efforts by law enforcement while maintaining lines of communication with supplie[r]s and customers." *Id.* ¶ 12.  During the investigation, he averred, searches of phones seized pursuant to search warrants demonstrated that the members of the alleged conspiracy used each phone for a "few months" and "often possessed multiple phones at one time." *Id.*  In addition, based on his review of "reports, surveillance video, and still images from over 150 burglaries," Hancock averred that members of the alleged conspiracy "used cell phones to communicate with each other during the burglaries." *Id.* ¶¶ 13–15 (attaching photographs showing individuals using their cell phones in vehicle parking lots).  Hancock also averred that a "court-authorized FBI review of over a dozen seized phones" had shown that members of the alleged conspiracy "use[d] their phones … to document their exploits during and after the burglaries." *Id.* ¶¶ 16–21 (submitting photographs from the seized phones and stating that they depicted various Defendants posing with stolen merchandise).  Based on the above evidence, Hancock concluded that "there [was] probable cause to believe … that members of the [conspiracy] carried their cell phones with them while committing the burglaries under investigation, and that location information for those phones will therefore lead to evidence of the … [o]ffenses, including who was present in the areas of burglaries at the times they occurred." *Id.* ¶ 21.

Hancock attributed each Target Telephone to a particular Defendant.  According to the Affidavit, Cartagena used Target Telephone 1, which he dropped during his flight from FBI

agents, and Target Telephone 2, which law enforcement seized from his residence during the execution of a search warrant. *Id.* ¶¶ 23–25. The Affidavit states that the FBI's analysis of Target Telephones 1 and 2 showed communications occurring over those phones from September 2020 to December 2020. *Id.* ¶ 27. Hancock attributed Target Telephones 3 and 4 to Santiago because law enforcement officers seized those phones during the execution of a search warrant at his residence and because searches of those phones pursuant to a warrant yielded text messages, photos, and videos linking Santiago to the phones. *Id.* ¶¶ 30–31. Herrera used Target Telephone 6, which the FBI seized during his arrest and analyzed, finding content "showing it to have been used by Herrera." *Id.* ¶ 40. Hancock also attributed Target Telephone 5 to Herrera because "cell phones belonging to Cartagena and Santiago, searched by investigators, contain text conversations and other information that identify Herrera" as the user of Target Telephone 5. *Id.* ¶ 41. Hancock believed Noble used Target Telephone 7 because law enforcement officers seized the phone from Noble when they arrested him and Noble provided the number associated with that phone as his own to the law enforcement officers. *Id.* ¶ 36.

As for Baines, who was not charged in the Superseding Indictment, Hancock averred that "there [was] probable cause to believe … that Baines started associating with the [conspiracy] no later than July 2020, and that he participated in numerous burglaries with the [conspiracy]." *Id.* ¶ 43. Hancock submitted photographs, which he averred depicted Baines in the following settings:

- One of Baines and Santiago taken "hours before" the July 29, 2020 burglaries;
- One found on Santiago's cell phone and "believed taken around December 2020" showing Baines with a large amount of cash;
- One of Baines with Santiago and Noble with a "large amount[] of cash at a location believed to be Baines's residence in the Bronx";
- One of Baines, Cartagena, Noble, and Santiago taken after the burglaries on November 20, 2020; and
- One of Baines in the driver's seat of a vehicle with Santiago sitting on top taken after the burglaries on December 10, 2020.

*Id.* ¶ 44–46.

Hancock attributed Target Telephones 8 and 9 to Baines.  Hancock believed that Baines used Target Telephone 8 because there were text messages between that phone and Target Telephones 3 and 4, which were Santiago's phones, and because Santiago saved the phone number for Target Telephone 8 under the name "Shotty" in Target Telephones 3 and 4.  *Id.* ¶ 47. "Shotty" "is an alias listed for Baines in New York law enforcement records."  *Id.* Hancock also averred that the user of Target Telephone 8 sent photographs "identifying those photos as photos of himself" to the user of Target Telephone 4.  *Id.*  Hancock believed that Baines used "Target Telephone 9 because [he] provided that number and that number was listed for him in numerous [New York Police Department] complaint, arrest, and accident reports ranging from November 2017 to January 2021."  *Id.* ¶ 48.  In addition, the subscriber information for Target Telephone 9 "lists an address on Bouck Avenue in the Bronx where Baines resided until his most recent arrest."  *Id.* ¶ 49.  Hancock believed, "based on GPS metadata attached to the image," that it was at that address that the photograph shown on the right in paragraph forty-four of the Affidavit— which depicts three individuals holding what appear to be two large stacks of currency—was taken.  *Id.* ¶¶ 44, 50.

Magistrate Judge Robert M. Spector issued the search warrants on May 19, 2021.  21-MJ-503, ECF Nos. 2, 4, 7, 8.

### c.  *The Second Superseding Indictment*

On June 15, 2021, a grand jury returned a Second Superseding Indictment adding Baines as a member of the conspiracy and alleging that Baines, along with Santiago and Noble, stole cell phones from stores and transported them from Connecticut to New York on November 20,

2020.  ECF No. 96 at 2, 5.  The Second Superseding Indictment alleged that the conspiracy

began in July 2020 and ended around January 15, 2021.  *Id.* at 2.

## II.  Discussion

### a.  *Probable Cause for the Search Warrant*

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that

"no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."  U.S.

Const. Amend. IV.  "Probable cause is a fluid concept, and in deciding whether to issue a search

warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision

whether, given all the circumstances set forth in the affidavit before him, including the veracity

and basis of knowledge of persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be found in a particular place."  *United States v. Torres-

Fernandez*, No. 21-19, 2021 WL 4944455, at *3 (2d Cir. Oct. 25, 2021) (internal quotation

marks and brackets omitted) (citing *Illinois v. Gates*, 462 U.S. 213, 232, 238 (1983)).

"A search warrant issued by a neutral and detached magistrate is entitled to substantial

deference, and doubts should be resolved in favor of upholding the warrant."  *United States v.

Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks, brackets, and citations omitted).

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form

of *de novo* review."  *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*,

462 U.S. at 236).  "[T]he task of a reviewing court is simply to ensure that the 'totality of the

circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable

cause determination."  *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*,

462 U.S. at 238).

Baines moves to suppress all the evidence seized pursuant to the search warrant issued by Magistrate Judge Spector.  ECF No. 139-1.  Baines argues that the Affidavit submitted with the search warrant applications is "conclusory" because it fails to set forth evidence showing that "the string of burglaries … actually occurred" and "an indictment is not evidence that the allegations of an indictment are true."  *Id.* at 2.  In addition, Baines argues that the affidavit fails to set forth the affiant's basis for identifying Cartagena, Santiago, Herrera, Noble, and Baines in photographs, *id.* at 3, and that the factual averments specifically about Baines fail to "rise to the level of probable cause," *id.* at 4.  The Government counters that the "affidavit … provided Judge Spector with a substantial basis for finding probable cause," ECF No. 146 at 7, and Baines's challenge to the affidavit "ignor[es] the totality of the information presented" "by attacking isolated paragraphs," *id.* at 9.  The Government also argues that the grand jury's return of the Superseding Indictment supports a finding of probable cause that the burglaries occurred on the dates and at the locations detailed in that indictment, even though the indictment did not name Baines as a defendant.  *Id.* at 10–11.  I agree with the Government: when giving "substantial deference" to Magistrate Judge Spector's issuance of the search warrants, I conclude that the affidavit supports a finding of probable cause to search the location and other historical information associated with the two phones attributable to Baines.

Contrary to Baines's argument, the grand jury's return of the Superseding Indictment, which Officer Hancock described in the affidavit, provides probable cause for the existence of a conspiracy between Cartagena, Santiago, Herrera, and Noble and for the occurrence of the burglaries on the dates and at the locations specified in the indictments.  The grand jury itself applies a probable cause standard, and so it is reasonable for a court to treat the factual allegations in an indictment as supported by probable cause.  *See Gobern v. United States*, No.

18-cv-12411 (VSB), 2020 WL 6487965, at *6 (S.D.N.Y. Nov. 4, 2020) (referring to "the probable cause standard applicable before the grand jury"); *see also United States v. Feng Ling Liu*, No. 12-CR-934 (RA), 2014 WL 101672, at *5 (S.D.N.Y. Jan. 10, 2014) (citing cases and stating that "district courts in [the Second Circuit] have considered the allegations in indictments when evaluating magistrates' findings of probable cause"); *United States v. Pirk*, 292 F. Supp. 3d 584, 589 (W.D.N.Y. 2017) (stating that "the existence of [an] Indictment supports a finding of probable cause to believe that a crime was committed"). The Superseding Indictment alleges that Cartagena, Santiago, Noble, and Herrera were a part of a conspiracy beginning in July 2020 and ending on January 15, 2021 and were involved in burglaries at various locations in Connecticut on July 25, 2020, July 28, 2020, July 29, 2020, July 31, 2020, November 20, 2020, and December 11, 2020. ECF No. 38 at 1–5. In addition to the Superseding Indictment, the affidavit includes photographs of stolen merchandise, vehicle keys, and key fobs at Cartagena's and Santiago's residences. ECF No. 146-1 ¶¶ 8–10. Based on the Superseding Indictment and the evidence described in the affidavit, there was probable cause to believe that Cartagena, Santiago, Herrera, and Noble were members of the alleged conspiracy and that they committed the burglaries on the dates and at the locations described.

By itself, of course, the Superseding Indictment does not show probable cause that any evidence of a crime would be found in the historical information associated with the two phones attributed to Baines. The Superseding Indictment does not charge Baines with any crimes or identify him as an unindicted co-conspirator. *See* ECF No. 38. Nor does it mention any phones associated with him. *See id.* But it does foreclose Baines's arguments that there was an insufficient basis to find probable cause that the underlying crimes were committed or that the conspiracy lasted from July 2020 to January 15, 2021, both of which are predicate facts that

provide an important piece of the overall picture of probable cause for searching historical

information associated with Baines's phones.  Whether the remaining pieces of that picture

materialize depends on whether the Affidavit establishes probable cause that (1) Baines used

Target Telephones 8 and 9, (2) Baines participated in the conspiracy, and (3) evidence of

criminal conduct would be found in the historical information associated with the conspirators'

phones.  After carefully considering the Affidavit, I find that it does.

First, Hancock's Affidavit established probable cause that Baines used Target Telephones

8 and 9.  Hancock averred that Santiago saved Target Telephone 8 as "Shotty" in his phones,

Target Telephones 3 and 4, and that New York law enforcement records list "Shotty" as an alias

for Baines.  ECF No. 146-1 ¶ 47.  In addition, as discussed in more detail below, the user of

Target Telephone 8 sent an image of himself to Santiago, the user of Target Telephones 3 and 4,

and that image bears some resemblance to other images identified by Hancock as being Baines.

As for Target Telephone 9, the Affidavit states that "Baines provided that number and that

number was listed for him in numerous [New York Police Department] complaint, arrest, and

accident reports ranging from November 2017 to January 2021."  *Id.* ¶ 49.  In addition, the

"subscriber information for Target Telephone 9 lists an address on Bouck Avenue in the Bronx

where Baines resided until his most recent arrest."  *Id.* ¶ 50.

Second, the Affidavit supports a finding of probable cause that Baines was a part of the

alleged conspiracy.  The Affidavit provides evidence of Baines's communicating with Santiago.

For example, and as just noted, the user of Target Telephone 8, which I have found probable

cause was Baines, sent photographs "identifying those photos as photos of himself" to Santiago's

phone, Target Telephone 4.  *Id.* ¶ 47.  There were also text message conversations between

Target Telephone 8 and Target Telephones 3 and 4.  *Id.*  The Affidavit also links Baines's

residence to the conspiracy: According to the Affidavit, metadata from the rightmost photo in paragraph 44—showing individuals identified by Hancock as Santiago, Baines, and Noble holding large stacks of currency—indicate that it was taken at an address in the Bronx at which Baines resided until his most recent address.  Id. ¶¶ 44, 50.  And while Baines has some basis to challenge Hancock's ability to identify him, a point I discuss further below, he has no real basis to challenge Hancock's ability to identify Santiago, with whom Hancock avers he is familiar from "in-person interactions and from [his] review of hundreds of photos and videos extracted from cell phone dumps."  *Id.* ¶ 15.  The presence of Santiago at Baines's residence while holding large stacks of cash is a key piece of evidence linking Baines to the conspiracy, given the detailed information and multiple images showing Santiago's involvement in the conspiracy set forth in the Affidavit.  *See id.* ¶¶ 17, 18, 20, 29-34, 44.[4]

To be sure, Baines is correct that the Affidavit offers few facts suggesting that Hancock had enough personal knowledge to identify Baines in the images set forth in the Affidavit. Baines argues that the "affiant has never actually seen … [him]," ECF No. 139-1 at 3, and that it is difficult to identify Baines in any of the photographs, *id.* at 4–5.  Hancock never describes the source of his knowledge of Baines's physical attributes, and in some photographs, it would likely be difficult for anyone to identify Baines.[5]  *See* ECF No. 146-1 ¶ 45 (Officer Hancock averred that he had "knowledge about Baines's physical attributes.").  In others, however, it is possible to discern that the individual Hancock identifies as Baines appears repeatedly as an African-

---

[4] Even Baines concedes that the affidavit includes "some factual, evidentiary, non-conclusory information" linking Santiago to the conspiracy.  ECF No. 139-1 at 4.

[5] For example, Officer Hancock averred that Baines appears in the photographs in paragraphs eighteen and forty-six of the Affidavit.  ECF No. 146-1 ¶¶ 18, 46.  I agree with Baines that it is nigh impossible to say anything about the fourth individual shown in the image on the right in paragraph 18, other than that he or she appears to be wearing a dark-colored baseball cap and to have a zipped mask or jacket covering most of his or her face.  The image of the individual in the driver's seat in paragraph 46 would at most permit an inference that that person is an African American male wearing a dark jacket and, apparently, a hat.

American male, with beard and moustache stubble, a lean build, and, in two photos, an afro of consistent size and shape. *See id.* ¶¶ 44, 47. While the apparent consistency of these images would not support a finding to a high degree of certainty that they depict the same person, it does provide some contribution to the overall picture of probable cause.

Baines's other challenges are less persuasive. For example, he argues that Hancock lacked any basis for his belief that one of the photos in which Hancock identified Baines was taken "hours before" the July 29, 2020 burglaries. ECF No. 139-1 at 5–6. I disagree. Hancock averred that the image in question was "taken at the same time, date, and location" as another image showing only Santiago taken hours before the July 29, 2020 burglaries, which the FBI discovered during its court-authorized review of the Defendants' phones. ECF No. 146-1 ¶ 16–17, 44. In the two photographs, Santiago is wearing the same red T-shirt with the phrase "SWOOSH LIFE," and the backgrounds—a white sedan and a brick building with a green awning and a truck parked in front—appear to be identical. *See id.* ¶¶ 17, 44. In addition, Hancock described the court-authorized searches of cell phones belonging to Santiago, Cartagena, and Herrera that were seized when those Defendants were arrested or during the execution of earlier search warrants. *Id.* ¶¶ 8–9, 16. Further, Hancock linked particular phones to specific Defendants. *See id.* ¶¶ 16, 47 (linking Target Telephones 3 and 4 to Santiago). Given the Affidavit's reference to earlier searches of the phones, *id.* ¶ 8, and the well-known availability of metadata on cell phone images, it would be reasonable to infer that Hancock's statement that the photo of Baines with Santiago was taken hours before the July 29, 2020 burglaries at the same location was supported by Hancock's personal knowledge. The same point about the earlier searches of Santiago's phones and the availability of metadata dispose of Baines's challenge to Hancock's statements about the timing and source of the middle photo in

paragraph 44, which Hancock avers was found on one of Santiago's phones and shows Baines sitting in a car with a pile of cash.

Taken together, these photographs and the accompanying averments from Hancock provide reason to believe that Baines communicated with Santiago, hosted Santiago and another conspirator at his residence to count or process large amounts of cash, and appeared with Santiago hours before the July 29, 2020 burglaries. This is enough to conclude that the Magistrate Judge had a "substantial basis" for finding probable cause that Baines was a member of the conspiracy.

Finally, the Affidavit supported a finding of probable cause that there would be evidence of the crime found in the location and other historical information associated with the conspirators' phones, including Target Telephones 8 and 9. As Hancock explained, the investigation indicated that the members of this conspiracy "used cell phones to communicate with each other during burglaries" and "to document their exploits during and after burglaries." ECF No. 146-1 ¶¶ 13, 16. Specifically, Hancock provided evidence from the FBI's investigation showing various Defendants "posing with large amounts of cash, stolen phones, and stolen vehicles," *id.* ¶¶ 16–17, 19, 20, and Defendants using their phones to communicate during burglaries, *id.* ¶ 13–15. Thus, it is reasonable to infer from the Affidavit that evidence of the locations of these individuals at the times shown on metadata gleaned from the existing images of their criminal exploits, and other historical information associated with their phones (*see* note 3, *supra*), would provide further evidence of their involvement in the conspiracy. I conclude that the Magistrate Judge had a "substantial basis" to conclude that there was a "fair probability" that evidence of a crime would be found in the location and other historical information associated with Target Telephones 8 and 9.

For these reasons, I find that the affidavit supported a finding of probable cause for the search warrant.[6]

### b. *The Search Warrant Was Not Overly Broad*

"When a warrant is challenged as overbroad, the issue is whether there exists probable cause to support the breadth of the search that was authorized." *United States v. Wapnick*, No. 92-CR-419, 1993 WL 86480, at *5 (E.D.N.Y. Mar. 16, 1993), *aff'd*, 60 F.3d 948 (2d Cir. 1995). Baines argues that the warrant was "overboard" because it authorized the seizure of historical cell phone information from July 1, 2020 through January 31, 2020, while the Affidavit provided evidence that Willie Baines was involved in burglaries only on July 20, November 20, and December 11. ECF No. 139-1 at 9. The Government counters that the affidavit presents sufficient evidence establishing that the conspiracy spanned from July 2020 to January 2021. ECF No. 146 at 15. I agree with the Government. The Superseding Indictment supports a finding of probable cause that the conspiracy began in July 2020 and ended around January 15, 2021, ECF No. 38 at 2, and based on the evidence described above, there was probable cause that Baines was a part of that conspiracy beginning in July 2020. ECF No. 146-1 ¶¶ 43-44. The Affidavit also states that the members of the conspiracy are suspected for "approximately 200 burglaries" and refers specifically to burglaries occurring in July, November, and December 2020. *Id.* ¶¶ 6, 17-19. Because the Superseding Indictment and the Affidavit, taken together, supported a finding of probable cause that Baines was a part of this conspiracy and that the conspiracy was an extensive one, involving 200 burglaries from July 2020 to January 2021, the warrant was not overly broad by including the entire period of the alleged conspiracy.

---

[6] Because I find that there was probable cause to support the search warrant, I decline to address the Government's argument that Baines lacks standing to challenge the search warrant because he has not "assert[ed] ownership" over Target Telephones 8 and 9, ECF No. 146 at 6.

### c. *Good-Faith Exception*

Even if the search warrant was invalid, I find that the evidence seized pursuant to that warrant is still admissible under the good-faith exception. "A violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule." *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010). "[E]vidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion and will not be suppressed." *United States v. Eldred*, 933 F.3d 110, 118 (2d Cir. 2019) (internal quotation marks and citation omitted). "The good-faith exception … holds that when the agents executing a search warrant act with an objectively reasonable good-faith belief that their conduct is lawful, improperly obtained evidence remains admissible because in such circumstances, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (internal quotation marks and citation omitted). However, the good-faith exception does not apply in four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). "These exceptions reflect the general rule that, '[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Romain*, 678 F. App'x 23, 25 (2d Cir. 2017) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). "The pertinent analysis of deterrence and culpability is objective," and a court's "good-faith inquiry is confined to the objectively ascertainable question whether a

reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances." *Rosa*, 626 F.3d at 64 (internal quotation marks and citation omitted).

The Government argues that even if the search warrant was not supported by probable cause, "the affidavit would still support the executing officers' reasonable belief that the warrant was legally obtained and could be relied on." ECF No. 146 at 16. Baines presents no arguments on whether the good-faith exception applies but argues that the Magistrate Judge "blindly accepted the conclusions of the affiant." ECF No. 139-1 at 1. I agree with the Government. Here, law enforcement relied on a search warrant supported by a twenty-page Affidavit detailing the Superseding Indictment, the investigation of the conspiracy, and the Defendants' use of their phones in furtherance of that conspiracy. With regard to Baines, the Affidavit detailed reasonable grounds for attributing Target Telephones 8 and 9 to him and a reasonable basis to believe that the conspirators counted cash at his residence and that he was otherwise connected to the conspiracy. Based on the information presented by the affiant, I find that it was objectively reasonable for the officers executing the search warrant to rely on Magistrate Judge Spector's determination that probable cause existed.

There is no evidence that this search warrant qualifies for any of the four circumstances in which the good-faith exception does not apply. There is no evidence suggesting that the magistrate judge was "knowingly misled" or "wholly abandoned his … judicial role." There is also no evidence that the affidavit was "so lacking in indicia of probable cause" or the warrant "so facially deficient" as to preclude reasonable reliance. To the contrary, as described above, the affiant presented detailed information about the conspiracy and evidence tying Baines to that conspiracy. Hancock's affidavit is far from "bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations." *Clark*, 638 F.3d at 103. Baines also fails to

point to any evidence of "sufficiently deliberate" police conduct that requires deterrence.

Therefore, even if the search warrant was invalid, I find that the evidence is still admissible

under the good-faith exception.

### III.     CONCLUSION

For the reasons above, the motion to suppress (ECF No. 139) is DENIED.


IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
                January 4, 2022